**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

RENARD T. POLK,                                    3:14-cv-00073-MMD-VPC

                            Plaintiff,

    v.                                             **REPORT AND RECOMMENDATION**
                                                   **OF U.S. MAGISTRATE JUDGE**

KELLY BELANGER, *et al.,*

                            Defendants.

 

    This Report and Recommendation is made to the Honorable Miranda M. Du, United States District Judge. The action was referred to the undersigned Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1)(B) and LR IB 1-4. Before the court is defendants' motion for summary judgment (#34). Plaintiff filed an opposition (#36),[1] and defendants replied (#40). The court has reviewed the motion and papers, and hereby recommends that the motion be granted.

## I.    FACTUAL BACKGROUND AND PROCEDURAL HISTORY

    Renard T. Polk ("plaintiff") is an inmate in the custody of the Nevada Department of Corrections ("NDOC"). Presently, plaintiff is incarcerated at Lovelock Correctional Center ("LCC") in Lovelock, Nevada. Pursuant to 42 U.S.C. § 1983, plaintiff brings several civil rights claims against NDOC and LCC officials. On April 14, 2014, the District Court screened plaintiff's complaint and permitted counts I, III, V, and VIII to proceed (#5). The Court further provided plaintiff an opportunity to file an amended complaint that cured the deficiencies the Court identified with counts VI and VII. Plaintiff failed to file an amended complaint, and this

---

[1] Plaintiff styled his opposition as a motion to strike and/or cross-motion for summary judgment. The court denied the motion to strike on April 27, 2015 (#45) because plaintiff failed to present meritorious arguments for striking defendants' motion. In addition, the court indicated that it would decline to consider the cross-motion, as the content of the paper revealed that it was not a genuine cross-motion. The court allowed, however, that it would consider the paper as an opposition to defendants' motion to the limited extent that plaintiff discussed facts and arguments related to the underlying claims in this suit.

court subsequently ordered on May 21, 2014 that the complaint would proceed only on the remaining counts (#9). Each of those counts alleges a deprivation of personal property without due process of law, in violation of the Fourteenth Amendment.

Count I alleges that NDOC investigator David Keener ("Keener") "received, came into possession or acquired the plaintiff's property," which included a criminal law textbook, bundles of loose paperwork, a manila envelope, charts, business ideas, and business proposals. (#3 at 5). On February 19, 2008 and November 8, 2010, Keener allegedly "destroyed, converted, [lost,] or damaged . . ." these items. (*Id*.) In Count III, plaintiff contends that LCC property supervisor Terry Lindberg ("Lindberg") "received, came into possession of or acquired . . ." a personal notebook, magazines, boots, and legal supplies, which he "destroyed, [lost,] converted or damaged . . . " on November 21, 2013. (*Id*. at 7.) Count V alleges that R. Waldo ("Waldo") "collected" magazines, boots, "nude personal photos," legal books, a television, shoes, stencils, a personal notebook, pens, and legal supplies, all of which he "lost, damaged, or destroyed . . ." on November 7, 2013. (*Id*. at 9.) Count V also alleges that Dwayne Deal ("Deal"), an LCC administrative liaison, "refuse[d] to take corrective measures . . . ." (*Id*.) Finally, plaintiff alleges in Count VIII that financial officer Albert Peralta ("Peralta") and Pauline Simmons ("Simmons") made unauthorized deductions from plaintiff's inmate account. (*Id*. at 12.) In particular, plaintiff states that $350 had been deposited into the "gift coupon program," from which departmental charges "cannot be deducted . . . ," but such deductions were nevertheless made on June 17, 2009, April 15, 2010, August 24, 2012, and May 7, 2013. (*Id*.)

## II.    LEGAL STANDARD

Summary judgment allows the court to avoid unneeded trials. *Nw. Motorcycle Ass'n v. U.S. Dep't of Agric*., 18 F.3d 1468, 1471 (9th Cir. 1994). The court properly grants summary judgment when the record discovered by the parties demonstrates that "there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 330 (1986). "[T]he substantive law will identify which facts are material. Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that

are irrelevant or unnecessary will not be counted." *Anderson v. Liberty Lobby*, 477 U.S. 242, 248-49 (1986). A dispute is "genuine" only where a sufficient evidentiary basis would allow a reasonable jury to find for the nonmoving party. *Id*. "The amount of evidence necessary to raise a genuine issue of material fact is enough 'to require a jury or judge to resolve the parties' differing versions of the truth at trial.'" *Aydin Corp. v. Loral Corp*., 718 F.2d 897, 902 (9th Cir. 1983) (quoting *First Nat'l Bank of Ariz. v. Cities Serv. Co*., 391 U.S. 253, 288–89 (1968)). Conclusory statements, speculative opinions, pleading allegations, or other assertions uncorroborated by facts are insufficient to establish a genuine dispute. *Nelson v. Pima Cmty. Coll*., 83 F.3d 1075, 1081-82 (9th Cir. 1996).

Summary judgment proceeds in burden-shifting steps. When the moving party bears the burden of proof at trial, it must support its motion "with evidence which would entitle it to a directed verdict if the evidence went uncontroverted at trial." *C.A.R. Transp. Brokerage Co. v. Darden Rests., Inc*., 213 F.3d 474, 480 (9th Cir. 2000) (internal quotation omitted). In contrast, a moving party who does not bear the burden of proof "need only prove that there is an absence of evidence to support the non-moving party's case[,]" *In re Oracle Corp. Sec. Litig*., 627 F.3d 376, 387 (9th Cir. 2010), and such a party may additionally produce evidence that negates an essential element of the nonmoving party's claim or defense, *Nissan Fire & Marine Ins. Co. v. Fritz Cos*., 210 F.3d 1099, 1102 (9th Cir. 2000). Ultimately, the moving party must demonstrate, on the basis of authenticated evidence, that the record forecloses the possibility of a reasonable jury finding in favor of the nonmoving party as to disputed material facts. *Celotex*, 477 U.S. at 323; *Orr v. Bank of Am., NT & SA*, 285 F.3d 764, 773 (9th Cir. 2002). The court views all evidence and any inferences arising therefrom in the light most favorable to the nonmoving party. *Colwell v. Bannister*, 763 F.3d 1060, 1065 (9th Cir. 2014).

Where the moving party meets its burden under Rule 56, the nonmoving party must "designate specific facts demonstrating the existence of genuine issues for trial. This burden is not a light one." *In re Oracle Corp*., 627 F.3d at 387 (internal citation omitted). "The non-moving party must show more than the mere existence of a scintilla of evidence. . . . In fact, the non-moving party must come forth with evidence from which a jury could reasonably render a

1   verdict in the non-moving party's favor." *Id.* (internal citations omitted).  The nonmoving party

2   may defeat the summary judgment motion only by setting forth specific facts that illustrate a

3   genuine dispute that requires a factfinder's resolution.  *Liberty Lobby*, 477 U.S. at 248; *Celotex*,

4   477 U.S. at 324.  Although the nonmoving party need not produce authenticated evidence, *see*

5   Fed. R. Civ. P. 56(c), mere assertions, pleading allegations, and "metaphysical doubt as to the

6   material facts" will not defeat a properly-supported summary judgment motion, *Orr*, 285 F.3d at

7   783.

## III.   DISCUSSION

9       Defendants move for summary judgment on several grounds.  Among other arguments,

10   they contend that certain of plaintiff's claims are barred by the statutes of limitations; some

11   claims are not properly before this court because plaintiff has failed to exhaust his administrative

12   remedies; and still others fail on their merits.[2]  The court more fully considers these arguments

13   below.

### A.   Civil Rights Claims Pursuant to 42 U.S.C. § 1983

15       42 U.S.C. § 1983 aims "to deter state actors from using the badge of their authority to

16   deprive individuals of their federally guaranteed rights."  *Anderson v. Warner*, 451 F.3d 1063,

17   1067 (9th Cir. 2006) (quoting *McDade v. West*, 223 F.3d 1135, 1139 (9th Cir. 2000)).  The statute

18   "provides a federal cause of action against any person who, acting under color of state law,

19   deprives another of his federal rights[,]" *Conn v. Gabbert*, 526 U.S. 286, 290 (1999), and is

20   "merely . . . the procedural device for enforcing substantive provisions of the Constitution and

21   federal statutes," *Crumpton v. Gates*, 947 F.2d 1418, 1420 (9th Cir. 1991).  Claims under § 1983

22   require the plaintiff to allege (1) the violation of a federally-protected right by (2) a person or

23   official who acts under the color of state law.  *Warner*, 451 F.3d at 1067.  To prevail, the plaintiff

---

25   [2] Defendants additionally argue for summary judgment on the claim against Deal because there is

26   no supervisory liability in § 1983 actions (#34 at 10-11), on all claims because the deprivations
     were unauthorized, and therefore do not rise to constitutional violations because Nevada provides

27   a post-deprivation remedy in the form of small claims actions (*Id*. at 12-13), and finally, on
     counts I, III, and V on the ground of *res judicata* (*Id*. at 13-14).  Because the court determines that

28   defendants are entitled to summary judgment for the reasons discussed above, it does not reach
     these arguments.

1  must allege and prove sufficient facts under each element of the underlying constitutional or

2  statutory right.

3        In this case, defendants are each state prison officials acting within their respective

4  capacities under state law. Plaintiff alleges violations of his Fourteenth Amendment right to due

5  process. Therefore, he has satisfied § 1983's threshold requirements.

6  **B.      Statute of Limitations**

7        Defendants argue that certain claims or portions thereof are barred by the statute of

8  limitations.  Because plaintiff filed his complaint on December 24, 2013, and giving plaintiff nine

9  days of tolling for a period in which a grievance pertaining to some of the personal property

10  issues was pending, they argue that any incidents that occurred prior to December 15, 2011 are

11  time barred.  (#39 at 7-8.)  Specifically, this bars the 2008 claims against Keeler.  As to the Count

12  VIII claims, defendants argue that plaintiff is entitled to sixty-five days of tolling, thereby rending

13  the 2009 and 2010 deductions outside of the limitations period.  (*Id*. at 8.)

14        In his opposition, plaintiff does not respond to this argument or contest defendants'

15  characterizations of the relevant time periods.  He vaguely references that he filed concededly

16  improper grievances, but he provides no description of particular dates or incidents grieved.  (*See*

17  #36 at 7.)

18  **1.      Standard**

19        Federal law provides no statute of limitations for § 1983 claims, and federal courts

20  accordingly look to the period of limitations for personal injury torts as provided by state law.

21  *Owens v. Okure*, 488 U.S. 235, 249-50 (1989).  Thus, in Nevada, the statute of limitations for §

22  1983 claims is two years.  *Irish-Miller v. Las Vegas Metro. Police Dep't*, No. 2:14-cv-1654-JCM-

23  NJK, 2015 WL 1530608, at *3 (D. Nev. Apr. 6, 2015); Nev. Rev. Statutes 11.190(4).  However,

24  because the Prison Litigation Reform Act ("PLRA"), 42 U.S.C. § 1997e(a), requires inmates in

25  Nevada to exhaust their claims through the NDOC's grievance process prior to filing lawsuits in

26  federal court, the period of limitations is tolled during the pendency of the grievance process.  *See*

27  *Wisenbaker v. Farwell*, 341 F. Supp. 2d 1160, 1165 (D. Nev. 2004).  As such, events underlying a

28

1    § 1983 action must fall within two years of the filing date, plus the number of days between the

2    filing of a prison grievance and prison officials' final response to that grievance.

3    **2.      Analysis**

4          The summary judgment record before the court demonstrates that the statute of limitations

5    bars certain incidents identified in plaintiff's complaint.  First, the allegations related to the 2008

6    deprivations by Keeler in count I, even if true, are far outside of the limitations period and

7    therefore should be dismissed.  Second, and similarly, the alleged 2009 and 2010 deductions in

8    count VIII are outside of the limitations period.  Because plaintiff has not raised specific issues of

9    fact with respect to these incidents—that is, by suggesting that he had grieved these particular

10   issues for a lengthy period of time, such that the applicable limitations period would be enlarged

11   through tolling—the court recommends that summary judgement be granted on these particular

12   incidents.

13   **C.      Failure to Exhaust**

14         Next, defendants argue that plaintiff has failed to exhaust his administrative remedies with

15   respect to the remaining personal property deprivations in Counts I, III, and V.  These include the

16   alleged deprivations on November 8, 2013 by Keeler, on November 21, 2013 by Lindberg, and on

17   March 13, 2013 and November 7, 2013 by Waldo and Deal, each of which remain in the lawsuit

18   because they fall within the limitations period. Defendants argue, based upon an exhibit (#34-6),

19   that plaintiff initiated several informal level grievances but never completed the appropriate

20   processes.  Accordingly, he has failed to exhaust his administrative remedies and the PLRA bars

21   each of the November claims.  Similarly, because plaintiff never grieved the alleged March

22   takings, they, too, are not properly before the court.  (#34- at 9-10.)

23         Plaintiff counters by stating that "on more than one occasion the plaintiff has submitted

24   grievances that were misrepresented." (#36 at 7.)  That is, he contends that he submitted one type

25   of grievance, such as an "emergency grievance," that defendants characterized as the initial

26   "informal grievance," or a "second level grievance" that defendants classified as a "first level

27   grievance." (*Id.*)  He further points to *Meeks v. Burson*, No. 3:12-cv-00322-MMD-WGC, 2014

28   WL 4666743, at *10 (D. Nev. Sept. 17, 2014), where the Court held that an inmate plaintiff

1  proved that the grievance process was effectively unavailable to him.  Defendants distinguish

2  *Meeks* on the facts and argue it does not alter the outcome of the exhaustion analysis.

3  **1.      Standard**

4       Under the PLRA, "[n]o action shall be brought with respect to prison conditions under [42

5  U.S.C. § 1983], or any other Federal law, by a prisoner confined in any jail, prison, or other

6  correctional facility until such administrative remedies as are available are exhausted."  42 U.S.C.

7  § 1997e(a).  The exhaustion requirement is mandatory.  *Porter v. Nussle*, 534 U.S. 516, 524

8  (2002).  Failure to exhaust is an affirmative defense, and the defendants bear the burden of

9  proving that the inmate has not exhausted his available administrative remedies.  *Jones v. Bock*,

10  549 U.S. 199, 216 (2007).

11       "[A]pplicable procedural rules [for proper exhaustion] are defined not by the PLRA, but

12  by the prison grievance process itself."  *Id*. at 218.  Exhaustion requires that prisoners take "all

13  steps the [state] agency holds out . . . ."  *Woodford v. Ngo*, 548 U.S. 81, 90 (2006).  It "demands

14  compliance with an agency's deadlines and other critical procedural rules because no adjudication

15  system can function effectively without imposing some orderly structure on the course of its

16  proceedings."  *Id.* at 90-91.  These processes and the remedies provided thereby "need not meet

17  federal standards, nor must they be 'plain, speedy, and effective.'"  *Porter*, 534 U.S. at 524.

18  Inmate plaintiffs are required to exhaust all "available" remedies, and a remedy is available when,

19  as a practical matter, it is capable of use.  *Brown v. Valoff*, 422 F.3d 926, 936-37 (9th Cir. 2005).

20  **2.      Analysis**

21       The court agrees with defendants that plaintiff has failed exhaust counts I, III, and V, and,

22  therefore, summary judgment is warranted.  Under the NDOC grievances process, embodied

23  within NDOC Administrative Regulation ("AR") 740, a grievance consists of an informal

24  grievance, a first level grievance, and a second level grievance.  Only by grieving at all three

25  levels does an inmate exhaust his remedies.  (*See* #34-12.)  NDOC AR 711 requires that

26  grievances related to an inmate's personal property include not only the informal grievance forms

27  AR 740 requires, but also the completion of an "Inmate Personal Property Claim Form DOC-

28

1   3026" (the "3026 form").  (#34-9 at 8; #34-12 at 6.)  Thus, an inmate who fails to complete and

2   submit a 3026 form has not complied with the NDOC's procedural rules.

3        Defendants have met their burden by demonstrating that plaintiff has not properly grieved

4   the alleged deprivations in March and November 2013.   They submit a complete record of

5   plaintiff's grievances, which demonstrates that he did not grieve the alleged March taking (*see*

6   #34-7)—a fact which plaintiff does not contest.   With respect to the alleged November

7   deprivations, plaintiff's grievance record indicates that he failed to include a 3026 form with his

8   informal grievance related to the alleged takings in November.  (#34-7 at 4.)  As such, he has not

9   exhausted his claims—even if the court charitably construes the single November grievance as

10  covering the allegations against each of the defendants in counts I, III, and V.

11       Plaintiff's reliance on *Meeks* to create a factual issue is unavailing.  There, the inmate

12  repeatedly submitted grievances that were rejected for purported procedural deficiencies, many of

13  which the Court determined lack merit.  In contrast, plaintiff's grievance record demonstrates that

14  he did not comply with applicable rules regarding the 3026 form and, although he was informed

15  of the fact, he did not resubmit the grievance.  The NDOC's rejection of a grievance for failure to

16  submit a 3026 form is not an analogous frustration of the process that renders the grievance

17  system effectively unavailable.  Rather, the rule serves a legitimate and important purpose: by

18  requiring the form, NDOC officials receive a precise list of property that the officials have

19  allegedly taken or destroyed, and officials may then compare the list to an inmate's property

20  inventory to determine whether the alleged deprivations are meritorious.  (*See generally* #34-9.)

21  Thereby, the form permits not only efficient and accurate evaluation of property matters, but also

22  affords to the NDOC an early opportunity to correct issues that arise—the very purpose of a

23  grievance process.   *See Porter*, 534 U.S. at 525 (explaining that the PLRA exhaustion

24  requirement affords "corrections officials time and opportunity to address complaints internally

25  before allowing the initiation of a federal case").

26       Thus, supposing it is true that defendants "misrepresented" the level of his grievances

27  with respect to the alleged November takings, summary judgment is still appropriate.  The record

28  demonstrates beyond dispute that plaintiff failed to complete a 3026 form.  Even if the court

construes grievances pertaining to the alleged deprivations as first and second level grievances, rather than the informal level that NDOC officials assigned to them, it remains the case that plaintiff failed to complete a property inventory form.  Plaintiff was apprised of the deficiency on several occasions.  (*See* #34-7.)  Despite repeated instruction, plaintiff ignored these directives. He is not free to ignore the procedural requirements of the NDOC's grievance process.  *See Woodford*, 548 U.S. at 90-91.  Consequently, defendants are entitled to summary judgment on the remaining part of count I, and counts III and V in their entirety.

### D.      Inmate Account Deductions

Finally, defendants argue that count VIII against Peralta and Simmons fails on its merits. First, they argue that Simmons had no role in making the purportedly unauthorized deductions, as she was not employed with the inmate banking division of NDOC at the relevant times.  (#34 at 11.)  As to Peralta, defendants argue that he cannot be liable under the Fourteenth Amendment for the August 2012 and May 2013 deductions.  Relying on *Schenker v. Rowley*, No. 3:12-cv-00174-LRH-VPC, 2013 WL 321688, at *2-3 (D. Nev. Jan. 28, 2013), they argue that even indigent inmates may be charged for legal supplies when the inmate has the availability to pay and legal supplies are provided whenever the inmate so requires.  (#34 at 11-12.)  Accordingly, the $12.50 and $97.30 deductions from these dates are not constitutionally infirm.  Plaintiff counters that a Nevada Supreme Court Order, ADKT 411, prohibits deductions for legal supplies from indigent inmates.  (#36 at 8.)  Defendants reply that the Order is inapposite: it merely pertains to the charges that criminal defense attorneys may impose upon their clients, and as such, has no application to the instant issue.  (#39 at 7.)

The court recommends that defendants' motion be granted on the remaining count VIII claims.  First, as a preliminary matter, Simmons is entitled to summary judgment because defendants have offered proof that she had no role in these deductions (#34-11 at 3), and plaintiff does not dispute this fact.  Second, defendants are also correct as to the constitutionality of the particular deductions.  ADKT 11 has no application here; the source of a right to free legal materials, if any, must arise in federal law.

In federal court, plaintiffs are permitted to proceed *in forma pauperis* ("IFP") upon the court's eligibility determination.  *See* 28 U.S.C. § 1915.  However, although IFP status allows inmates to proceed without prepayment of the filing fee, it does not thereby require that states absorb all costs that inmates might incur when litigating their cases.  *See Tedder v. Odel*, 890 F.2d 210, 212 (9th Cir. 1989) ("Although the plain language of section 1915 provides for service of process for an indigent's witnesses, it does not waive payment of fees or expenses for those witnesses.  The Supreme Court has declared that 'the expenditure of public funds [on behalf of an indigent litigant] is proper only when authorized by Congress . . . .'").  Under the plain terms of the statute, only the filing fee is waived, and the inmate may also effect service via the United States Marshals Service.  Otherwise, the inmate is generally responsible for his own expenses.

The Ninth Circuit and courts in this district have rejected the notion that inmates are constitutionally entitled to free legal supplies.  *See Johnson v. Moore*, 926 F.2d 921, 925 (9th Cir. 1991), *superseded on other grounds by* 948 F.2d 517; *Schenker*, 2013 WL 321688, at *2-3.  Only when a failure to provide supplies to an inmate who cannot afford them effectively precludes his access to the courts might a violation of the Constitution arise.  *See Schenker*, 2012 WL 321688, at *2-3.  Aside from that particular instance, the Constitution does not demand free legal supplies and materials.  Plaintiff, therefore, lacks legal basis for his ostensible right.

The lack of a legal right to free materials does not settle the inquiry, however, as due process guarantees may nevertheless interpose requirements on charges to inmates for legal materials and supplies.  The Fourteenth Amendment's Due Process Clause guarantees citizens due process of law when government actors deprive them of property, *see* U.S. Const. amend. XIV, and inmates have a constitutionally protected property interest in their inmate accounts, *Hansen v. May*, 520 F.2d 728, 730 (9th Cir. 1974).  Yet the protection is not absolute: as the Ninth Circuit has described, "the Due Process Clause protects inmates from *unauthorized* [account] deductions." *Vance v. Barrett*, 345 F.3d 1083, 1091 (9th Cir. 2003) (emphasis added).  Under state law, NDOC officials may deduct reasonable amounts from an inmate's personal account for postage, legal photocopies, legal supplies, and other costs "related to litigation" that the NDOC incurs on behalf of the inmate.  Nevada Revised Statutes ("NRS") 209.246(3)(a)-(c).

1    The charges to an inmate's accounts are "deprivations" only in the literal sense.  This is not an

2    occasion in which an inmate's property is taken away without compensation, but instead, a

3    situation in which an inmate's own choices require his exchange of account funds for materials he

4    requires.  The guarantees of due process do not stretch so imprecisely that prison officials must

5    provide to inmates due process for "deprivations" that are, in effect, volitional transactions.

6         To the extent such deductions require due process, the adequacy of the lawmaking process

7    provides it.  "[W]hen the action complained of is legislative in its nature, due process is satisfied

8    when the legislative body performs its responsibilities in the normal manner prescribed by law."

9    *Halverson v. Skagit Cnty*, 42 F.3d 1257, 1260 (9th Cir. 1994) (quoting *Sierra Lake Reserve v.*

10   *City of Rocklin*, 938 F.2d 951, 957 (9th Cir. 1991)); *see also Craft v. Ahuja*, 475 Fed. App'x 649,

11   650 (9th Cir. 2012) (so analyzing a procedural due process claim regarding deductions from an

12   inmate account, as permitted by California law).  An action "legislative in nature" is one directed

13   at a large group of individuals, rather than a particular person or small number of citizens.  *See*

14   *Halverson*, 42 F.3d at 1260-61.  Here, it is plain that the statute is legislative in nature.  Although

15   plaintiff does not focus his claim on the statute itself, it is apparent that the source of his

16   grievance is not the particular action of defendants, but the statute by which they lawfully acted.

17   Absent an argument that the Nevada Legislature enacted the statute in a procedurally irregular

18   manner, no due process claim lies.

19        In sum, defendants argue, and plaintiff concedes, that the deductions pertained to legal

20   supplies that he received.  The deductions are authorized by state law.  He alleges not that the

21   deductions are in an excessive amount, but instead, that the deductions may not be withdrawn at

22   all.  He is mistaken, and his claims fail on that basis.  *See White v. Gibbons*, 431 Fed. App'x 526,

23   527 (9th Cir. 2011).

24                              **IV.    CONCLUSION**

25        For the reasons stated herein, the court recommends that defendants' motion for summary

26   judgment (#34) be granted.  To the extent the District Court wishes to consider plaintiff's

27   purported cross-motion for summary judgment as such, the court recommends that it be denied

28   for failure to meet the moving party's burden under Rule 56.

The parties are advised:

1.      Pursuant to 28 U.S.C. § 636(b)(1)(c) and Rule IB 3-2 of the Local Rules of Practice,  the parties may file specific written objections to this Report and Recommendation within fourteen days of receipt.  These objections should be entitled "Objections to Magistrate Judge's Report and Recommendation" and should be accompanied by points and authorities for consideration by the District Court.

2.      This Report and Recommendation is not an appealable order and any notice of appeal pursuant to Fed. R. App. P. 4(a)(1) should not be filed until entry of the District Court's judgment.

## V.      RECOMMENDATION

**IT IS THEREFORE RECOMMENDED** that defendants' motion for summary judgment (#34) be **GRANTED**;

**IT IS FURTHER RECOMMENDED** that plaintiff's cross-motion (#36) be denied;

**IT IS FURTHER RECOMMENDED** that the Clerk **ENTER JUDGMENT** and close this case.

**DATED**: May 13, 2015.

**UNITED STATES MAGISTRATE JUDGE**